IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-CV-0791-MSK-SKC

**PHARMACISTS MUTUAL INSURANCE CO.,**

    Plaintiff,

*v.*

**NAMIC INSURANCE CO.,**

    Defendant.

---

**OPINION AND ORDER DENYING MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss or Change Venue (**# 40**), the Plaintiff's response (**# 53**), and the Defendant's reply (**# 56**). For the reasons that follow, the Motion is denied.

## I. JURISDICTION

The Court has subject-matter jurisdiction to hear this case under 28 U.S.C. § 1332(a). The parties dispute whether the Court can exercise personal jurisdiction over the Defendant.

## II. BACKGROUND[1]

The Plaintiff, Pharmacists Mutual Insurance Co. ("PHMIC"), is an Iowa corporation with its principal place of business in Algona, Iowa. PHMIC issued an automobile insurance policy to Kimberly Schock, a Colorado resident. Defendant Namic Insurance Co. ("NAMICO") is an

---

[1] The Court recounts and accepts as true the well-pled facts alleged in the Amended Complaint (**# 36**). *See Dudnikov v. Chalk & Vermilion Fine Arts Inc*., 514 F.3d 1063, 1069–70 (10th Cir. 2008).

Indiana corporation with its principal place of business in Indianapolis. NAMICO insured PHMIC against professional liability.

Ms. Schock claimed uninsured-motorist benefits under her policy with PHMIC. PHMIC initially told Ms. Schock that her uninsured-motorist benefits were capped at $500,000, but later informed her that such benefits were capped at $100,000. As a result, Ms. Schock accused PHMIC of acting in bad faith, and sued PHMIC (Case No. 17-CV-0592) claiming breach of contract, and bad-faith breach of contract for unreasonable delay and denial of benefits under Colorado law (the Underlying Action).

NAMICO undertook PHMIC's defense, both retaining defense counsel in Colorado and in orchestrating the defense. When Ms. Schock offered to settle for an amount within the policy limits of its coverage by NAMICO, NAMICO accepted the offer, but making its contribution subject to "allocation and funding of" of the settlement amount. PHMIC brings this suit because it funded the settlement with Ms. Schock and NAMICO has refused to reimburse it for any part of the sum paid.

In its Amended Complaint (**# 36**), PHMIC asserts three claims against NAMICO: (1) breach of contract based on its failure to pay under the professional liability policy; (2) bad faith failure to pay in violation of Colorado law,[2] specifically, Colorado's Unfair Claims Act, C.R.S. §§ 10-3-101 *et seq*,; and (3) breach of the covenant of good faith and fair dealing recognized under Colorado common law. NAMICO moves to dismiss all claims for lack of personal jurisdiction and improper venue (**# 40**).

---

[2] The Amended Complaint makes clear this suit comes under Colorado law. (*See* **# 36 ¶¶ 64–66, 85**.) Though it does not specifically reference Colorado's statutory bad-faith provisions, C.R.S. §§ 10-3-1115, 10-3-1116, the Court assumes these statutes comprise the vehicle through which PHMIC brings a claim for bad faith under Colorado law.

## III. LEGAL STANDARD

When the Court's jurisdiction over a defendant is challenged pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999); *OMI Holdings Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Courts may elect to resolve the jurisdictional question immediately, by conducting an evidentiary hearing on the issue, or they may defer resolution of the jurisdictional question until trial, requiring the plaintiff to make only a *prima facie* showing of jurisdiction at the pretrial phase. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The Court may receive affidavits and other evidentiary material to assist in resolving the issue, but it must resolve any disputed facts in the light most favorable to the plaintiff. *Id.*

Normally, the jurisdictional inquiry comprises two components, which the plaintiff must show. First, the laws of the forum state confer jurisdiction by authorizing service upon the defendant, and second, the exercise of such jurisdiction comports with the principles of due process. *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). However, in Colorado, that inquiry is short-circuited because Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause." Thus, the inquiry simply becomes one of whether due-process principles would be satisfied by the exercise of personal jurisdiction. The due-process inquiry itself has two components. First, a court must determine whether a defendant has "such minimum contacts with the forum state" that it should reasonably expect to be sued in courts in that state. Second, a court considers whether the exercise of personal jurisdiction in the circumstances presented offends traditional notions of fair play and substantial justice.

The minimum-contacts analysis considers whether the defendant is susceptible to either general or specific jurisdiction in the forum state. *See Am. Fidelity Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016). General jurisdiction arises in the location that the defendant is "at home" — generally, a corporation's state of incorporation and its principal place of business — and in certain "exceptional" cases, in other locations where the defendant's connections are substantial. *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017). Specific jurisdiction is a more flexible concept, depending upon the nature and extent of the defendant's contacts with the forum and whether the legal claims in suit arise out of those contacts. *Bristol-Meyers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). Specific jurisdiction arises when the defendant engages in "an activity or occurrence that takes place in the forum state," from which the claims at issue arise. That activity must be purposefully directed by the defendant towards the state, rather than being random or fortuitous or the result of the actions of another, and the harmful effects of that conduct must typically be felt in the forum state. *Anzures v. Flagship Restaurant Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016).

The fair-play and substantial-justice analysis requires a "fact-specific" inquiry on which the defendant bears the burden of proof. *ClearOne Commc'ns Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). The defendant must present a "compelling case," showing considerations that would render the exercise of jurisdiction unreasonable. Such considerations include: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the judicial system's interest in maintaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id*.

## IV. DISCUSSION

For the following reasons, the Court finds that it can properly exercise personal jurisdiction over NAMICO in this action, and that venue is proper.

### A. Personal Jurisdiction

NAMICO argues that its entry of appearance, defense of PHMIC in the underlying suit and its communications with PHMIC and Ms. Schock's counsel do not constitute "minimal contacts sufficient to support personal jurisdiction. Were these the only pertinent facts under the law in this Circuit, the Court might agree. But, the Tenth Circuit has expressly addressed the analysis applicable to situation where a nonresident indemnity insurer seeks dismissal of claims against it by a nonresident insured arising from an underlying action brought in the same district. *OMI Holdings Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).[3] *OMI* sets out the analytical roadmap for this case. Many of the facts in *OMI* are identical to those in this matter. The divergence of facts is significant, however, because it compels a different result than that reached in *OMI*.

OMI Holdings was a defendant in a patent-infringement action brought in the United States District Court in Kansas. OMI was defended by Canadian insurers, and when OMI had a dispute with its indemnity insurers as to the nature and extent of its insurance coverage, it brought suit against them in the District of Kansas. The indemnity insurers moved to dismiss such claims for lack of personal jurisdiction, arguing as NAMICO does here, that an entry of appearance and fulfillment of defense obligations in the underlying lawsuit were not sufficient to constitute minimum contacts for purposes of personal jurisdiction. The trial court disagreed,

---

[3] Although not addressed by either party, *OMI* supplants both Colorado authority and citations by NAMICO to cases outside the Tenth Circuit.

5

noting that although the insurers were Canadian entities, the insurance policies required them to defend in any United States forum, and thus the insurers reasonably could expect to have issues affecting insurance coverage addressed in such forum as well.

The Tenth Circuit agreed with the trial court that because the insurance policies obligated the insurers to defend any United States forum, the insurers had minimum contacts with Kansas. But the Circuit's analysis did not stop there. Differing from other circuits, it reasoned that simply because an insurer might reasonably expect to defend its insured in a domestic forum, the insurer need not reasonably anticipate that it would be sued in the forum. The finding of minimum contacts was not dispositive.

The court then turned to the question of fair play and substantial justice, ultimately concluding that the exercise of personal jurisdiction by a court in Kansas over the Canadian insurers would violate due process. The Circuit noted that the controversy between OMI and its Canadian insurers had no discrete connection with Kansas; the fact that the underlying case was brought in Kansas was fortuitous. It also noted that neither the insurers nor OMI were Kansas residents, none conducted business in Kansas, none were licensed to do business in Kansas, nor did any employ Kansas citizens. The insurance policy was drafted, negotiated, and executed outside Kansas, and its interpretation was not governed by Kansas law. Indeed, the insurance contract was governed by Canadian law.[4] As a result, the Circuit reasoned that Kansas lacked any significant interest in adjudicating the dispute because Canada had a greater interest in

---

[4] In later opinions, the Circuit has emphasized that the primary justification for its conclusion in *OMI* was that the indemnifying insurance policies were expressly governed by Canadian law. *Newsome v. Gallacher*, 722 F.3d 1257, 1272 (10th Cir. 2013).

6

determining the terms of the subject policies. In addition, the burdens of litigating in Kansas were higher and OMI could obtain more effective relief in Canada.

In applying *OMI's* analytical process, the Court pauses to note the similarity between certain facts in *OMI* and those of this case. Both involved an underlying lawsuit in which an indemnity insurer entered an appearance on behalf of the insured. In both cases, the insured sued the indemnity insurer to determine the scope of and enforce the insurance policy. In both cases, the indemnifying insurer did not do business in the forum state. Neither indemnity policy was negotiated in the forum where the lawsuit was brought, and neither policy specified a forum where a suit against the indemnifying insurer must be brought.[5] On these facts, the Court must agree with the finding made in *OMI* — NAMICO, as the insurer, might reasonably expect to defend PHMIC in Colorado, where PHMIC did business, and thus it has minimum contacts with Colorado.

Turning to questions applicable to fair play and substantial justice, the Court again pauses to identify the pertinent facts, this time with those that differ from *OMI*. In *OMI*, the policy required application of Canadian law; the NAMICO policy does not specify a choice of law that governs its interpretations. In *OMI,* the underlying action was premised upon federal patent law and its location in Kansas was fortuitous; the Underlying Action here was brought in Colorado because the automobile accident that gave rise to it occurred in Colorado, and because the Plaintiff was a Colorado resident who asserted bad-faith claims arising under Colorado law against PHMIC. Finally, in *OMI*, the claims against the insurer were solely breach-of-contract

---

[5] The policy issued by NAMICO states only that a "CLAIM must be brought in the United States of America, its possessions or territories, Puerto Rico or Canada." (**# 1-2 at 4**.)

claims; here, the claims against NAMICO arise both under the insurance contract and under Colorado law.  (*See* **# 36 ¶¶ 65–66** (citing C.R.S. § 10-3-101 *et seq*.).)

In assessing the questions of fair play and substantial justice, courts ordinarily consider non-exclusive factors including (1) the burden on the defendant to proceed in the forum, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *Bowers*, 643 F.3d at 764.  Here, the most important factors are Factors 1 and 2.

### 1. *Burden on Defendant of Litigating in the Forum*

NAMICO has failed to identify any significant burden it will suffer if forced to defend in Colorado.  It argues that it has no license to conduct business in Colorado, maintains no offices in Colorado, employs no agents in Colorado, insures no Colorado residents, and issued an insurance policy in either Iowa or Indiana.  Assuming these facts to be true, they do not address any undue practical difficulty or expense to defending in this action.  To the contrary, NAMICO demonstrated its abilities to defend a lawsuit in Colorado when it defended PHMIC.  To be sure, there is some additional burden to an out-of-state Defendant, but such burden can be greatly reduced by technology that promotes long-distance participation in filing of documents, in appearing remotely, in discovery, and the like.  NAMICO does not explain what specific burdens it will bear by participating in this lawsuit that cannot otherwise be mitigated.  Thus, the Court finds that the burden it would bear in defending in this action is not undue.

## 2. *Colorado's Interest in Adjudicating the Dispute*

Ordinarily, a forum state's interest in adjudicating the dispute is triggered in three non-exclusive ways, listed in descending order importance: (1) providing a forum for residents to seek redress for injuries caused by out-of-state actors (2) adjudicating a dispute between two nonresidents where forum residents are affected, and (3) resolving disputes that require a general application of the forum state's law. *See OMI*, 143 F.3d at 1096 (citing *Asahi*, 480 U.S. at 115; *Burger King*, 471 U.S. at 483). The first of these factors is inapplicable because PHMIC is not a Colorado resident. But the other two strongly lean toward allowing this case to proceed in Colorado.

The second factor applies directly and is intertwined with the third. The Underlying Action brought by Ms. Schock against PHMIC was premised upon an insurance contract sold in Colorado to a Colorado resident. It asserted claims under Colorado's bad-faith insurance statutes (C.R.S. §§ 10-3-1115, 10-3-1116) and common law. (**# 36 at 29**.) This action also contains a claim premised upon Colorado's Unfair Claims Act (C.R.S. § 10-3-101 *et seq.*) brought via Colorado's statutory bad-faith provisions (C.R.S. §§ 10-3-1115, 10-3-1116), and at its core is a dispute as to whether the settlement Underlying Action was simply based on a breach of contract or also based upon the bad-faith claim, both under Colorado law. Thus, Colorado law is integral to factual and legal determinations to be made in this action. These claims are unique to Colorado, and its application of Colorado law can conceivably impact Colorado's interest in ensuring motor-vehicle insurance coverage, enforcing prompt and proper claims handling by auto insurers, and enforcing prompt and proper claims handling by indemnity insurers. No other state has a comparable interest. The policy contains no preference as to the law to be applied.

NAMICO argues that maybe Iowa or Indiana might have some interest based on the citizenship of the parties, but offers no particular tie to either this controversy or the policy.

The possibility that an action would be initiated in Colorado against an insurer indemnifying against unprofessional conduct by PHMIC should not come as a surprise. PHMIC has sold motor vehicle insurance in Colorado since the 1990s. Claims of unprofessional conduct are most likely to arise where the insured does business — Colorado. Where the indemnification policy does not specify governing law to the contrary, it is likely that unprofessional conduct of the insured will be determined by the law where the conduct occurred — again, Colorado.

For these reasons, the Court finds that the notions of fair play and substantial justice are not offended by subjecting NAMICO to personal jurisdiction in Colorado.[6]

**B. Venue**

NAMICO makes an abbreviated argument that the claims against it should be dismissed under Rule 12(b)(3) due to improper venue, which is distinct from a motion to transfer venue. *See Trujillo v. Williams*, 465 F.3d 1210, 1216 (10th Cir. 2006) (noting the district court's authority to do dismiss or transfer). PHMIC argues that venue is proper because a substantial part of the events giving rise to its claim occurred in Colorado.

28 U.S.C. § 1391(b) sets forth the appropriate venues for a given action, providing that venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[6] The parties offer little meaningful argument as to Factors 3 through 5. There is thus nothing in the record suggesting PHMIC can obtain more convenient and effective relief elsewhere, or that Colorado is an inefficient place to litigate the dispute, or that some unspecified state has a greater interest in adjudicating the dispute. *See Bowers*, 643 F.3d at 764.

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Even assuming a substantial part of the events or omissions giving rise to PHMIC's claims did not occur in Colorado, having determined that NAMICO is properly subject to personal jurisdiction in this action, venue is proper in this Court under 28 U.S.C. § 1391(b)(3).[7] Therefore, NAMICO's motion to dismiss for improper venue is denied.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss (**# 40**) is **DENIED**.

Dated this 20th day of September, 2019.

**BY THE COURT:**

_____
Marcia S. Krieger
Senior United States District Judge

---

[7] This determination is also pertinent to 28 U.S.C. § 1391(c)(2), which provides that a defendant is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question," making venue proper under 28 U.S.C. § 1391(b)(1).