IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-CV-0791-MSK-SKC

**PHARMACISTS MUTUAL INSURANCE CO.**,

    Plaintiff,

*v*.

**NAMIC INSURANCE CO.**,

    Defendant.

---

### OPINION AND ORDER GRANTING MOTION FOR RECONSIDERATION AND DISMISSING CLAIMS FOR LACK OF JURISDICTION

---

**THIS MATTER** comes before the Court on the Defendant's ("NAMIC") Motion for Reconsideration **(# 73)** of the Court's September 20, 2019 Opinion and Order **(# 64)** denying NAMIC's motion to dismiss, the Plaintiff's ("Pharma") response **(# 75)**, and NAMIC's reply **(#76)**; and Pharma's Motion for Leave to Amend its Complaint **(# 76)**, NAMIC's response **(# 77)**, and Pharma's reply **(# 78)**.

### FACTS

The Court assumes the reader's familiarity with the proceedings to date and the contents of the September 20, 2019 Order, and thus provides only a brief summary.

Pharma is an insurance company based in Iowa. It issued a policy for automobile insurance to Kimberly Schock, a Colorado resident. In 2014, Ms. Schock was involved in an automobile accident in Colorado, and she made a claim on the Pharma policy. A dispute arose between Ms. Schock and Pharma, and in 2017, Ms. Schock commenced suit against Pharma in Colorado state court, alleging claims sounding in bad faith breach of an insurance contract.

1

NAMIC is an insurance company based in Indiana.  It had issued a professional liability insurance policy to Pharma, insuring Pharma against <u>some</u> of the types of claims made against it by Ms. Schock.  Pharma thus notified NAMIC about Ms. Schock's lawsuit and NAMIC tendered a defense to Pharma on that suit in Colorado.  With NAMIC's consent, Pharma eventually settled with Ms. Schock, although there remained a dispute between NAMIC and Pharma as to what portions of that settlement fell within the NAMIC policy – such that NAMIC was obligated to indemnify Pharma for those portions – and which portions were solely Pharma's responsibility.  Nevertheless, the disagreement between NAMIC and Pharma did not affect the payment to Ms. Schock of the full settlement amount and Ms. Schock's claims against Pharma were fully resolved.

NAMIC and Pharma were unable to reach an agreement on how to allocate the costs of the Schock settlement between those claims covered by the NAMIC policy and those that were not, and Pharma eventually commenced this action.  Pharma's First Amended Complaint **(# 36)** alleges claims for: (i) breach of contract, under an unspecified jurisdiction's common-law; (ii) a claim that appears to be for common-law bad faith breach of an insurance contract, under an unspecified jurisdiction's common law; (iii) a common-law claim for breach of the covenant of good faith and fair dealing, under an unspecified jurisdiction's common law; and (iv) a claim for "exemplary damages," citing C.R.S. § 13-21-102.

NAMIC moved **(# 40)** to dismiss Pharma's claims in this action, arguing that this Court lacked personal jurisdiction over NAMIC related to Pharma's claims.  In the September 20, 2019 Order, this Court denied NAMIC's motion.  The Court found that NAMIC's involvement with defending Pharma during the Schock lawsuit in Colorado created sufficient contacts between NAMIC and Colorado to justify the exercise of personal jurisdiction.  The Court also weighed

certain factors to decide whether the exercise of personal jurisdiction over NAMIC in Colorado would comport with notions of fair play and substantial justice. Most significantly, the Court found that Colorado had a particular interest in adjudicating the dispute because Pharma's invocation of principles of Colorado insurance law "can conceivably impact Colorado's interest in ensuring motor vehicle insurance coverage, enforcing prompt and proper claims handling by auto insurers, and enforcing prompt and proper claims handling by indemnity insurers."

NAMIC filed the instant Motion for Reconsideration **(# 73)**, arguing that: (i) the Court erred by assuming that Colorado law would apply to Pharma's claims; (ii) rigorous application of Colorado's choice-of-law rules would yield a conclusion that either Indiana or Iowa law, not Colorado law, would apply to Pharma's claims; and (iii) if Indiana or Iowa, not Colorado, law governed the claims, Colorado's interest in adjudicating the dispute would dissipate and the primary basis for the Court's conclusion that notions of fair play and substantial justice would permit the exercise of personal jurisdiction over NAMIC in Colorado would no longer be correct.

Separately, Pharma moves **(# 74)** for leave to amend its Complaint to add a claim for statutory bad faith under C.R.S. § 10-3-1115 and -1116. NAMIC opposes that motion by arguing, again, that Indiana or Iowa law, not Colorado, governs the relations between the parties and thus, the interposition of a claim premised upon Colorado statutory law would be futile as the insurance relations between NAMIC and Pharma arise and exist outside of Colorado.

## ANALYSIS

The briefing on both motions frames up the central issue as being whether Colorado law will apply to Pharma's claims in this action. In that sense, there is little utility in carefully stepping through the analytical structure applicable to each motion. For example, even if the

Court were to conclude that NAMIC's Motion for Reconsideration should be denied because NAMIC could have, but did not, raise the choice-of-law issue in its prior briefing, that denial would not ameliorate the Court's need to reach the choice-of-law issue separately in the form of NAMIC's response to Pharma's Motion to Amend. Thus, in the interests of efficiency, the Court proceeds directly to the choice-of-law analysis, considering the questions of whether Pharma's claims in this action arise under Colorado law.

A federal court sitting in diversity, as this Court does here, applies the forum state – Colorado's – choice of law rules. *Wiglesworth v. Pagel,* 614 Fed.Appx. 953, 956 (10h Cir. 2015). Colorado applies two different choice of laws analyses, depending on whether the claim at issue sounds in tort or contract. Claims for ordinary breach of an insurance contract are classified as contract claims for this purposes, while claims for bad-faith breach of insurance contracts are treated as tort claims. *Kipling v. State Farm Mut. Auto Ins. Co.*, 774 F.3d 1306, 1310-12 (10th Cir. 2014). But ultimately, the analysis of both types of claims are fairly similar: both seek to apply "the local law of the state which [has] the most significant relationship to the transaction [or occurrence] and the parties" according to certain principles as set forth in Section 6 of the Restatement (Second) of Conflict of Laws. *Id.* Section 6 of the restatement requires a court evaluating a choice of laws question to consider several factors: (i) the needs of the interstate and international systems; (ii) the relevant policies of the forum; (iii) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (iv) the protection of justified expectations; (v) the basic policies underlying the particular field of law; (vi) certainty, predictability, and uniformity of the result; and (vii) ease in the determination and application of the law to be applied.

Here, the choice of law question circles around three potential jurisdictions: Iowa, the Pharma's state of residence; Indiana, NAMIC's state of residence; or Colorado, the location where Pharma insured Ms. Schock and where the defense of that action occurred. But more fundamentally, the question is a binary one: either Colorado has the most significant relationship to the dispute, or some other state (most likely Iowa or Indiana) does. If Colorado law applies, Colorado's interest in this action is substantial enough to warrant the Court's prior conclusion that it possesses personal jurisdiction over NAMIC; if another state's law applies, the Court's prior jurisdictional finding is called into doubt.

This Court's analysis of the choice of law issue is particularly guided by Section 193 of the Restatement, one that addresses the choice of law issues attendant to "Contracts of fire, surety or casualty insurance." That section states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6. . . .

In the commentary to this section, the Restatement authors note its application to "the various kinds of casualty insurance, such as . . . liability insurance." *Restatement* (Second), Conflict of Laws, § 193, *comment a*. The authors go on to state that the "principal location of risk" can often be readily ascertained and predicted, such as "when the insurance . . . insures the honesty and fidelity of the employees at a particular place of business."

Here, the policy issued by NAMIC to Pharma was a professional liability policy, one that insured Pharma against the risk that Pharma's employees, in the course of providing professional services (such as claim adjusting), might engage in acts or omissions that could cause third parties (*e.g.* Pharma's insureds) to suffer a loss and make a claim against Pharma. Thus, Section

5

193 would appear to apply to a situation like the one presented here, and would suggest that the choice of law is dictated by the locus of the risk – that is, the place where Pharma's employees might make errors or omissions in the course of their delivery of services. Because it appears to be undisputed that most of Pharma's employees rendering such services are located outside of Colorado, Section 193 would suggest that a non-Colorado state's law would apply to questions regarding the rights under the policy of insurance issued by NAMIC to Pharma.

Turning to the principles articulated in Section 6 of the Restatement, the Court notes that, viewed through the proper lens, Colorado's policies are largely agnostic to the relations between NAMIC and Pharma. To be clear, Colorado's interests in the relations between Pharma and Ms. Schock are substantial. Ms. Schock is a Colorado resident and Pharma is her insurer, and thus, Colorado has a profound interest in making sure that Pharma provides Ms. Schock with all of the coverage and benefits to which she is entitled, including benefits for any bad faith conduct that Pharma committed towards her. But Colorado has no particular interest in how Pharma – an Iowa corporation – re-insures or otherwise protects itself from losses that are due to its own employees' actions. Any loss sustained by Pharma as a result of a bad-faith claim by its insureds is felt by Pharma in Iowa, not Colorado.

Recognizing that the Pharma-NAMIC insurance contract is designed to protect Pharma from errors or omissions by its own employees is critical to understanding why that interest diverges from Colorado's substantial interest, discussed in the prior order, of "ensuring motor vehicle insurance coverage [and] enforcing prompt and proper claims handling by auto insurers." Whether NAMIC has or has not breached its professional liability policy with Pharma has no impact on whether Pharma, as an auto insurer in Colorado, provides adequate insurance coverage

to Colorado drivers or even whether insureds in Colorado are able to vindicate any claims against Pharma of bad-faith claims handling or other improprieties.

But the Court's prior statement that Colorado has an interest in "enforcing prompt and proper claims handling by indemnity insurers," to the extent that "indemnity insurers" refers to professional liability re-insurance of the type found in the NAMIC policy to Pharma, potentially overstates Colorado's interest.  It is true that Colorado has an interest in ensuring that auto insurers like Pharma are solvent.  But solvency can come in a wide array of forms, from adequate capitalization to maintaining appropriate levels of re-insurance.  If Pharma had shown that Colorado required it, as a condition of operating in Colorado, to demonstrate solvency via the existence of a professional liability policy of the type provided by NAMIC, the Court might be inclined to conclude that Colorado had a particular interest in how NAMIC administered that required policy, and thus, had an interest in applying Colorado law to this dispute.  But it does not appear that Colorado required Pharma to secure the professional liability policy at issue here, nor otherwise sought to control how Pharma allocated its risks that could result from its own employees' acts or omissions.  Put differently, so long as Ms. Schock received the full value of the settlement she agreed to  -- and there is no dispute that NAMIC paid that settlement in full – Colorado's interest came to an end.  The question of the extent to which the costs of that settlement would be allocated as between Pharma and NAMIC does not affect Colorado residents, thus diminishing or extinguishing Colorado's interest. Other jurisdictions, such as Pharma's home state of Iowa, would have a much more substantial interest in ensuring that the NAMIC policy is administered fairly towards an insured who resides in that state.

Interestingly, Colorado law is consistent with this reasoning.  In *ITT Specialty Risk Services v. Avis Rent A Car Systems, Inc.*, 985 P.2d 43 (Colo.App. 1998) a California resident

7

and employee who was in Colorado on business, was injured in an accident. The California employee sued the tortfeasor responsible for the accident and settled. ITT, the worker's compensation insurer, then sued the employee to recoup from the settlement amount benefits that ITT had paid to the employee. Applying Colorado law, the trial court dismissed ITT's claims, finding them to be an improper attempt to subrogate. But on appeal, the Court of Appeals reversed, finding that California law, rather than Colorado law, applied to ITT's claims. It noted that the trial court applied Colorado law "because the accident occurred in Colorado and involved two Colorado vehicles; the Avis vehicle was insured under a Colorado insurance policy; [the employee] was in Colorado for his employer's benefit; the lawsuit [against the tortfeasor] had been filed in Colorado; [ ] the proceeds at issue resulted from a settlement with a Colorado defendant who possessed a Colorado-issued insurance policy[; and] that application of California law would contravene the Colorado policy of ensuring full compensation for victims of automobile accidents." But the Court of Appeals noted that these "Colorado contacts," despite being "relevant to the case as a whole, had little bearing on the issue of whether ITT, a California worker's compensation insurer, was entitled to reimbursement" out of the proceeds of a settlement paid to the California employee. Applying the Restatement factors, the Court of Appeals explained:

> although the accident occurred in Colorado, both ITT and [the employee] are California residents and the relationship between them is centered in California. The Colorado tortfeasor and his insurance carrier no longer have any interest in the settlement proceeds, which were paid into the court registry. Further, the fact that Avis had a policy issued in Colorado and was required by Colorado to provide PIP benefits does not bear directly on the reimbursement issue.

The Court of Appeals further noted that "application of California law would [not] be contrary to Colorado public policy," insofar as the public policy of avoiding "inadequate compensation to

8

victims of automobile accidents" was "less compelling in cases involving compensation for a non-Colorado accident victim." It reasoned that the Restatement requires courts to consider the public policy interests of other states as well, and there, "California public policy favors reimbursing parties who have made payments under its worker's compensation law when an employee settles with a third party." Thus, the Court of Appeals determined that "California has a more substantial relationship than Colorado to the dispute between ITT and [the employee]." 985 P.2d at 47-48.

*ITT* closely tracks the issues in this case. In both cases, Colorado public policy was strongly implicated in the lawsuit over liability and damages flowing from the initial accident – that is, the lawsuit between the employee and the tortfeasor in *ITT* and the lawsuit between Ms. Schock and Pharma. But once those lawsuits were concluded and the insured received full compensation for their injuries, the subsequent dispute over re-insurance – over which party would bear the financial burdens of the settlements with the injured parties – lost their connection to Colorado, even though the accident and initial lawsuit had occurred here. As in *ITT*, the re-insurance relationship between Pharma and NAMIC, like the insurance relationship between ITT and the employee, existed from a contract that was formed and intended to be performed outside of Colorado. And as in *ITT*, other states, like Iowa and Indiana, have a greater interest in ensuring that policies of re-insurance between their own residents are properly executed than does Colorado, whose interest in the Pharma-NAMIC policy is minimal. Thus, *ITT* lends further support to the conclusion that this Court's prior determination that Colorado maintains a substantial interest in the claims at issue in this lawsuit was in error. Rather, a state other than Colorado has the most significant relationship to this dispute for conflict of laws purposes, and that state's laws will govern the claims herein.

Accordingly, upon reconsideration, the Court agrees with NAMIC that contrary to the reasoning in the prior Order, Colorado's interest in adjudicating this dispute is minimal, and insufficient to warrant the exercise of personal jurisdiction over NAMIC. Accordingly, the Court grants NAMIC's Motion for Reconsideration, vacates its September 20, 2019 Opinion and Order, and grants NAMIC's Motion to Dismiss for Lack of Personal Jurisdiction.

## CONCLUSION

For the foregoing reasons, NAMIC's Motion for Reconsideration **(# 73)** is **GRANTED**. The Court **VACATES** the September 20, 2019 Opinion and Order **(# 64)** and **GRANTS** NAMIC's Motion to Dismiss for Lack of Personal Jurisdiction **(# 40)**. Pharma's claims against NAMIC are **DISMISSED, without prejudice** and the Clerk of the Court shall close this case.

Dated this 31st day of October, 2020.

**BY THE COURT:**

_Marcia S. Krieger_
Marcia S. Krieger
Senior United States District Judge